John D. LEWIS, Plaintiff,

v.

Margaret HECKLER, Secretary of Health & Human Services, Defendant.

Civ. A. No. 83–175.

United States District Court, E.D. Kentucky, Catlettsburg Division.

May 12, 1984.

Gary E. Conn, West Liberty, Ky., for plaintiff.

U.S. Atty. Louis DeFalaise, Lexington, Ky., for defendant.

---

## MEMORANDUM OPINION
## AND ORDER

WILHOIT, District Judge.

This cause is before the Court on the Secretary's motion for relief from judgment. The claimant has responded, and the motion is now fully submitted.

The judgment from which the Secretary seeks relief is an Order entered by this Court dealing with a problem that has presented itself not only in this case but virtually all social security disability appeals that come before this Court.

This Court, consistent with its opinion rendered in *Edward Flannery, Jr., v. Secretary, HHS*, 583 F.Supp. 347 (E.D.Ky. 1984), started awarding interim benefits to social security claimants in cases in which the Secretary asks for repeated extensions of time to either comply with the time requirements of the Federal Rules of Civil Procedure or the Orders of this Court. The problem dealt with herein presents itself in slightly different factual contexts, each of which will be addressed below.

The first problem is the Secretary's repeated delays in filing an answer and submitting a copy of the administrative transcript or record. The purported reasons for such delays, if any are offered, include: (1), the Secretary's counsel, the United States Attorney, is presently unable to locate and/or procure a copy of the administrative transcript; (2), the tape or other record of the administrative proceedings has been lost, destroyed or is otherwise unusable; or (3), the Secretary or her counsel, the United States Attorney, simply has not had time to prepare an answer.[1]

A related problem is that even if the Secretary answers, with or without the transcript filed, she inevitably moves for an extension of time in which to file a memorandum in support of her decision, notwithstanding this Court's orders to file a brief on a date certain. In most cases, the Secretary moves for repeated extensions of time both to file an answer and to file a memorandum. Again, the usual excuse offered for such delays, if any is offered at all, is that the administrative record has not yet been forwarded to the United States Attorney's Office or that the record is not presently available.

This Court has been more than lenient with the Secretary. Time and again the Court has granted the Secretary's motions for extensions of time. Indeed a standing Order of this Court, entered in this division on October 25, 1975, gives the Secretary as a matter of course one hundred (100) days within which to file an answer in social security cases. That Order goes on to say that no further extensions of time will be granted. The Court, nonetheless, has frequently granted the Secretary's requested extensions (although the Secretary has never provided sufficient reasons for the Court to do so) in order to accommodate the Secretary, the United States Attorney's Office, and the Secretary's administration, which is apparently plagued with red tape and caseload backlog.

In the fall of 1983, this Court began refusing to unconditionally grant the Secretary's inordinate requests for extension of time. The Court in a number of cases gave the Secretary a limited extension of time, always adding that "no further extensions will be granted." The Secretary has ignored these Orders by continuing to move for further extensions.

Confronted with the Secretary's obstinacy, this Court fashioned a remedy, which will be called "interim benefits" herein, to accommodate the Secretary's apparent inability to comply this Court's Orders requiring that answers and memoranda in support of the Secretary's decision be filed in this Court within some reasonable time frame. The Secretary now argues that this Court is without authority to order such a remedy. The Court does not agree.

At the outset, the Court feels constrained to point out that the "interim ben-

---

1. What frequently happens is that the Secretary asks for several extensions and then moves for a remand because the tape or other record of the administrative proceedings is unusable or unavailable. This is what happened in *LaBonne v. Heckler*, 574 F.Supp. 1016 (D.Minn.1983).

efits" remedy it has fashioned for this case and similar cases is not the same as that awarded by other courts for relief from inordinate delays at the administrative level. *See Day v. Schweiker*, 685 F.2d 19 (CA 2 1982), *cert. granted*, 461 U.S. 904, 103 S.Ct. 1873, 76 L.Ed.2d 806 (1983); *Blankenship v. Schweiker, Secretary, HHS*, 722 F.2d 1282 (CA 6 1983).

The question posed in the foregoing cited cases is what remedy can be provided for the inordinate delays at the *administrative* level, not the *judicial* level. At the *judicial* level, unless and until Congress says otherwise, the courts are the only arbiters of what is or is not unreasonable delay and what should or should not be done about it. This is simply a matter of the inherent power of the court to control its own docket. Delays at the *administrative* level are matters between Congress and the executive, and the courts' role is simply to apply the law. Delay at the *judicial* level, on the other hand, is a matter for the court to remedy itself.

The Federal Rules of Civil Procedure provide an orderly method of penalizing parties for their failure to prosecute or defend actions. If this were a case involving any party other than the Secretary, the Court could readily declare a default judgment. F.R.Civ.P. 55. Of course, social security appeals are brought against the Secretary, and this Court is limited in its ability to award a default judgment. F.R. Civ.P. 55(e).

The rationale for F.R.Civ.P. 55(e) is a lofty one and this Court in no way intends to undermine it. Tax funds are too scarce, especially in times of budget shortages, to be disbursed for payment of judgments that are not substantially justified on the evidence.

In the social security context, the Sixth Circuit Court of Appeals has announced a pertinent rule regarding default judgments against the government. *Poe v. Mathews*, 572 F.2d 137 (CA 6 1978). In *Poe*, the circuit court reversed the district court for awarding a default judgment against the government for the Secretary's failure to answer and file an administrative transcript. The Sixth Circuit noted its sympathy for the district court, especially in light of its own mandate that the district courts in this circuit expedite review of social security cases (*see Webb v. Richardson*, 472 F.2d 529, 538 (CA 6 1972)),[2] but went on to hold that a default judgment cannot be entered against the Secretary without the benefit of the transcript having been filed in the court.

Other circuit courts confronted with the same problem have taken a similar view. *See e.g., Alameda v. Secretary, HEW*, 622 F.2d 1044, 1047–49 (CA 1 1980). In *Alameda,* the First Circuit announced that default can be entered against the Secretary even without the benefit of the Secretary's memorandum. *Id.* at 1049. This view would not appear to be in conflict with *Poe, supra,* because the Sixth Circuit did not say that default judgment against the Secretary was precluded in all circumstances. *See Peveler v. Schweiker*, 557 F.Supp. 1048, 1050 (WD Ky.1983); *Estes v. Harris*, 512 F.Supp. 1106, 1109–11 (SD Oh.1981).

It is true that mandamus against the Secretary would probably lie in order to compel her to produce a transcript for the Court to consider. *Cf. Poe, supra,* at 138. Mandamus, however, is a severe remedy, a motion for which is seldom made, and the violation of which would only lead to a contempt citation for the Secretary or one of her employees. Moreover, as drastic as contempt may be, it still does not necessarily produce a transcript. Certainly it could not have in a case like *Edward Flannery, Jr. v. Secretary, HHS*, 583 F.Supp. 347, *supra,* in which the Secretary moved for repeated extensions of time and finally moved for a remand based upon the fact that the tape of the administrative proceedings were inaudible, in effect admitting no transcript existed.

---

**2.** The mandate in *Webb* is particularly memorable to the undersigned for the reason that he argued the case before the Sixth Circuit in 1972.

In short, the Court is faced with the following dilemma: on the one hand, the Court must expedite its review of social security cases (*see Webb, supra*), and on the other, the Court must deal with the Secretary's repeated and unjustified requests for extensions of time.

In response to this dilemma, the Court could continue to grant the Secretary's repeated requests, ignoring *Webb's* mandate, and allow the Secretary in effect to dictate, in her unbridled discretion, the speed at which social security cases proceed in this Court. Alternatively, the Court could mandamus the Secretary to produce administrative records on a day certain after a complaint is filed and declare the Secretary in default, entering default judgment, just as soon as a transcript and the plaintiff's brief are filed.

None of the above responses, however, are satisfactory. This Court cannot ignore *Webb*, and in any event will not tolerate making the many deserving social security claimants that come before this Court wait years before they can receive benefits. In addition, the Court hesitates in issuing a writ of mandamus ordering the Secretary, on pain of contempt, to produce and file an administrative transcript in some reasonably timely fashion.[3] If the administrative caseload is as backlogged as the Secretary would have this Court believe, the Court would undoubtedly have to exercise its contempt power on repeated occasions. The Court does not believe such an extraordinary power should be so lightly and frequently used.

Finally, while declaring a default judgment in every case in which the Secretary fails to file a timely memorandum might encourage the Secretary to speed up her preparation of a memorandum, the finality

of a default judgment often reaches too far. If this Court defaulted the Secretary based solely on a claimant's brief, some undeserving claimants may be awarded benefits. That award would be a *final* decision of this Court. While the court in *Alameda* recognized the importance of having the Secretary's brief, it was content to allow a final default judgment be entered against the Secretary even though that judgment may not always be awarded to the most deserving claimants. *Alameda*, 622 F.2d at 1049.[4]

This Court believes an interim benefits award to be more flexible than a default judgment, and therefore more desirable. Not only can interim benefits ultimately be recouped from those plaintiffs who cannot establish their entitlement, but the award also places the burden of expeditious disposition of the case squarely upon the Secretary. Since the Secretary's admitted backlog of cases and administrative red tape are the sole causes for delays in social security cases, placing the burden of proceeding expeditiously on the Secretary is the natural solution.

If the Secretary's delays are to control the speed at which social security cases proceed in this Court, the award of interim benefits—to be paid only so long as the Secretary fails to file a transcript or memorandum, whichever the case may be—will at least encourage the Secretary to proceed as expeditiously as possible. In addition, the interim benefits remedy will vindicate this Court's authority to demand the Secretary's cooperation.[5]

The Secretary's assertion that 42 U.S.C. § 405(i) precludes the ordering of interim benefits is misplaced. *Cf. White v. Mathews*, 559 F.2d 852, 860–61 (2d Cir.1977) ("absence of a specific congressional provi-

---

**3.** Whom would the Court hold in contempt should the transcript not be forthcoming: the Secretary herself or one of her employees?

**4.** Indeed, the Court implicitly recognized this when it said:

"If the district court and we have been put in the predicament of flying on one wing [*i.e.*, when the Secretary has not filed a brief in

support of her decision], the flight need not be lengthy."
*Alameda*, 622 F.2d at 1049.

**5.** *Cf. Alameda*, 622 F.2d at 1049 (where the court admitted that its default judgment approach does not vindicate the court's authority to command assistance from the Secretary with respect to filing a timely brief).

sion does not bar the federal courts' exercise of its *remedial* power," *id.* at 860 (emphasis added)). This Court must have the inherent power to fashion an equitable remedy that will protect the integrity of the judicial process. Indeed, since the interim benefits remedy fashioned by this Court is similar to the idea behind coercive civil contempt, the Supreme Court's words in this regard are apposite:

"The power to punish contempt is *inherent* in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgment, orders and writs of the courts, and consequently, to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power."

*Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1874) (emphasis added).

The Court has, and *must* have, the inherent power to make parties proceed in a reasonably expeditious fashion. At the same time, the Court has a duty to insure that deserving claimants do not suffer indefinitely while the Secretary drags her feet, whether intentionally or not, in responding to every pleading filed in this Court. As has often been said, "justice delayed is justice *denied*." Never a truer word was spoken than in this context.

Accordingly, the Court being sufficiently advised, IT IS HEREBY ORDERED AND ADJUDGED that the Secretary's motion for relief from judgment be and the same is DENIED.